# EXHIBIT A

Case 8:24-cv-00044-JWH-ADS   Document 1-2   Filed 01/08/24   Page 2 of 33   Page ID #:4

30-2023-01363764-CU-OE-CJC - ROS # 8 - DAVID H. YAMASAKI, Clerk of the Court By S. Berry, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

  ZO SKIN HEALTH, INC., a California corporation; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

  NICOLE MCMILLER, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of California, Orange<br><br>Central Justice Center<br>700 Civic Center Drive West | CASE NUMBER:<br>*(Número del Caso):*<br><br>30-2023-01363764-CU-OE-CJC<br><br>Judge Shawn Nelson |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Malte Farnaes, Farnaes & Lucio, APC; 2235 Encinitas Blvd., Suite 210; Encinitas, CA 92024; (760) 942-9431

| DATE:  11/16/2023  DAVID H. YAMASAKI, Clerk of the Court<br>*(Fecha)* | Clerk,<br>*(Secretario)* | S. Berry | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

S. Berry

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify)*: ZO SKIN HEALTH, INC., a California corporation

   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)

   ☐ other *(specify)*:
4. ☑ by personal delivery on *(date)*:  12-6-23

| | | 12-7-23 |
|---|---|---|

Malte L. L. Farnaes, Esq. (SBN 222608)
  malte@farnaeslaw.com
**FARNAES & LUCIO, APC**
2235 Encinitas Boulevard, Suite 210
Encinitas, California 92024
Telephone:  (760) 942-9431
Facsimile:  (760) 942-9431

Attorneys for Plaintiff
NICOLE MCMILLER

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| NICOLE MCMILLER, an individual, | Case No. 30-2023-01363764-CU-OE-CJC |
| Plaintiff, | *Assigned for All Purposes To:* |
| v. | Hon. Judge Shawn Nelson |
| | Dept.: |
| ZO SKIN HEALTH, INC., a California corporation; and DOES 1-50, inclusive, | **COMPLAINT FOR DAMAGES FOR:** |
| Defendants. | 1. **WORKPLACE RETALIATION IN VIOLATION OF *CAL. GOV'T. CODE* §§12940, *ET SEQ.*** |
| | 2. **WORKPLACE RACIAL DISCRIMINATION - DISPARATE TREATMENT - IN VIOLATION OF *CAL. GOV'T. CODE* §§12940, *ET SEQ.*** |
| | 3. **FAILURE TO INVESTIGATE COMPLAINTS OF DISCRIMINATION & HARASSMENT IN VIOLATION OF *CAL. GOV'T. CODE* §§12940, *ET SEQ.*** |
| | 4. **WORKPLACE HARASSMENT IN VIOLATION OF *CAL. GOV'T. CODE* §§12940, *ET SEQ.*** |
| | **DEMAND FOR JURY TRIAL** |

- 1 -

COMPLAINT

1    Plaintiff NICOLE MCMILLER ("MCMILLER" or "PLAINTIFF"), an individual asserts

2  claims against Defendant ZO SKIN HEALTH, INC., ("ZO", "Defendant", or "the Company") a

3  California corporation; and DOES 1-50, inclusive (collectively "Defendants") and alleges as

4  follows:

5                                        **I.**

6                               **INTRODUCTION**

7    1.    California has long enshrined racial equality in the workplace. (Cal Const, Art. I §

8  8; Govt. Code § 12920.)    However, in this case Defendant ZO SKIN HEALTH, INC., has

9  systemically and deliberately engaged in and condoned harassment and racial discrimination

10  against Plaintiff and customers. And though Plaintiff repeatedly beseeched the Company to stop

11  the behavior, Defendant ZO tolerated the despicable conduct and disregarded the ensuing

12  retaliation directed at Plaintiff.  Plaintiff has suffered emotional distress, humiliation, and loss of

13  income as direct and proximate result of Defendant's conduct and therefore brings this case.

14                                       **II.**

15                          **JURISDICTION AND VENUE**

16    2.    This Court has jurisdiction over this action pursuant to the California Constitution

17  Article VI section 10, which grants the California Superior Court original jurisdiction in all causes

18  except those given by statute to other courts.

19    3.    This Court has jurisdiction over Defendant because, upon information and belief,

20  each Defendant is incorporated in the State of California, has sufficient minimum contacts in

21  California, and otherwise intentionally avails itself of the California market so as to render the

22  exercise of jurisdiction over them by the California Courts consistent with traditional notions of

23  fair play and substantial justice.  Further, Defendant's acts and omissions alleged herein were

24  directed, authorized, and ratified by Defendant's leadership in California, including without

25  limitations, by Defendant's Human Resources Department, which is located in Irvine, California.

26    4.    Venue is proper in this Court because Defendant is headquartered and has offices in

27  this County and Defendant's acts or omissions alleged herein took place in this County.

28  ///

## III.

## **PARTIES**

5.     At all times relevant hereto, Defendant ZO., was and is a corporation registered in California, headquartered and doing business in Orange County.  ZO employs well over 25 individuals in the State of California and over 500 individuals worldwide, and is subject to suit under the California Fair Employment and Housing Act, Government Code Section 12900 et seq. (FEHA).

6.     Plaintiff NICOLE MCMILLER, is, and at all times relevant was, an adult African American female residing in the County of Dallas, State of Texas.

7.     In this Complaint whenever reference is made to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of Defendant's officers, directors, agents, employees, or representatives, who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

8.     The true names and capacities of Defendants, whether individual, corporate, associate, or otherwise, sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names under California Code of Civil Procedure section 474.  Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

9.     Plaintiff is informed and believes, and thereon alleges, that Defendant and the Doe Defendants are the partners, agents, employees, or principals and co-conspirators of one another, and of each other; that Defendant and the Doe Defendants performed the acts and conduct herein alleged directly, aided and abetted the performance thereof, or knowingly acquiesced in, ratified, and accepted the benefits of such acts and conduct, and therefore each of the Doe Defendants is liable to the extent of the liability of the Defendant as alleged herein.

///

///

10.     Plaintiff is further informed and believes and thereon alleges, that at all times material herein, Defendant was dominated or controlled by their co-Defendants, and each was the alter ego of the other.  Whenever and wherever reference is made in this Complaint to any conduct by Defendant, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly, and severally.  Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint, but were employees and/or agents of Defendant, such individuals, at all relevant times acted on behalf of Defendant named in this Complaint within the scope of their respective employments.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.     Prior to commencing this civil action, and within the time provided by law, Plaintiff, Nicole McMiller, filed administrative charges with the California Civil Rights Department ("CRD"), and subsequently received a "Right-to-Sue" Letter from the CRD on November 16, 2023. Accordingly, Plaintiff has exhausted all administrative remedies necessary prior to filing this civil action. A true and correct copy of Plaintiff's November 16, 2023 "Right-to-Sue" Letter from the CRD is attached hereto as **"EXHIBIT A"** (CRD Matter Number: 202311-22674516).

## V.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.     Defendant ZO describes itself as the "The Leading Physician-Dispensed Skincare Brand." Defendant ZO markets and sells medical grade skin care products, such as cleansers and creams, to medical clinics and med spas in California and throughout the United States. Defendant ZO uses sales teams, made up of Account Executives and Junior Account Executives, to open and manage accounts within defined geographical sales territories throughout the United States.

13.     Plaintiff MCMILLER commenced working as an Account Executive for Defendant ZO on or about April 4, 2022.  Initially, MCMILLER was in charge of the sales territory for the greater Dallas, Texas area comprising:  North Dallas, Plano, Frisco, Carrollton, Addison, Allen, McKinney, Prosper, Little Elm, and North into Sherman, Texas.

///

14.     At all times relevant herein, MCMILLER performed her duties in a satisfactory, if not exemplary, manner.  Indeed, shortly after being hired, MCMILLER became a high performing Account Executive at ZO, not just in the State of Texas, but nationwide.

15.     MCMILLER's direct supervisor was, and is, at all times relevant, Jacqueline Martin ("Martin").  Martin is the Regional Sales Director for the Gulf Coast states, consisting of Texas, Louisiana, and Mississippi.  Martin is a Caucasian female.

16.     Throughout MCMILLER's employment with ZO, Martin has continually and pervasively harassed and discriminated against MCMILLER on account of her race, and subjected MCMILLER, and her accounts, to systemic racial profiling.   Defendant ZO has been aware of and has ratified Martin's conduct.

17.     Soon after MCMILLER began working at ZO, Martin told MCMILLER that she should get to know one of the other sales representatives in San Antonio and that the two of them would get along great because they are both "African American bourgeois" and have "the same type of hair."   Martin did not offer that same encouragement with regard to MCMILLER befriending the sales representatives, all white, who lived in a closer proximity to Plaintiff's home.

18.     In addition, in or about the last week of May 2022, Martin informed MCMILLER that Martin has a Caucasian family member who is "racist" against African Americans.  A few days later, on May 27, 2022, Martin texted MCMILLER a picture of a greeting card depicting an African American graduate and suggested sending it to Martin's racist family member's child.   When MCMILLER did not respond to the text, Martin demanded to know why MCMILLER did not laugh.

///

///

///

///

///

///

19. As her direct supervisor, Martin had to approve any new customer accounts that MCMILLER sought to open. However, MCMILLER soon realized that Martin refused to approve Asian owned and operated accounts. Systemically, when MCMILLER tried to open Asian owned accounts, Martin would tell her that the accounts were not "qualified." Martin was unable to articulate why these accounts were not "qualified" other than to advise MCMILLER to think about "protecting the brand" and that she should focus on other businesses in her territory. Over time, MCMILLER recognized that Martin employed overtly discriminatory practices in deciding who could be "qualified" to carry ZO Skin Health, which clearly fell along racial and ethnic lines.

20. Martin also demeaned MCMILLER's Hispanic owned accounts referring to them as her "Mexican Mafia" accounts.

21. In or around mid-April 2022, MCMILLER told Martin that she planned to bring in certain new minority owned high volume medical accounts. Martin, however, disapproved of the plan and referred to these potential new accounts as "Scam Artists" and "Shady." When MCMILLER asked Martin why she would refer to these medical establishments that way, Martin was unable to articulate why these accounts were not "qualified" other than continuously advising MCMILLER to focus on the other quality accounts in her territory and "protecting the ZO brand."

22. MCMILLER nevertheless persisted in asking Martin about her objections to opening these highly successful/high volume medical practices. Martin falsely responded that ZO Corporate Headquarters had sent these same potential clients cease and desist letters. When MCMILLER asked Martin to show her the cease and desist letters, Martin refused. However, Martin finally admitted that MCMILLER might get the Asian and other minority owned accounts approved while Martin was on vacation, suggesting there would be less push-back.

23. In or About July 2022, as MCMILLER continued her efforts to open minority owned accounts and facing resistance from Martin, Martin suddenly informed MCMILLER that ZO leadership had decided to realign and reduce her sales territory. MCMILLER is informed and believes that the decision to realign her territory originated with Martin in direct response to her attempting to open minority owned accounts and that ZO leadership approved and ratified Martin's request to realign MCMILLER's sales territory.

24.    In or about early August 2022, Martin stalled the approval of an Asian owned practice that MCMILLER submitted.  Martin told MCMILLER the account "looked shady" and directed a junior account executive to "surveil" the Asian owned practice.  Martin further denigrated Asian owned medical practices in general, referring to them collectively as "diverters."  In response, MCMILLER told Martin that she was profiling accounts based on ethnicity and that it seemed overtly discriminatory.

25.    On August 8, 2022, Martin wrote an email to ZO's Chief Domestic Sales Officer, Nancy Marchain ("Marchain"), and to the National Vice President of Sales, Dan Nolan ("Nolan"), expressing concern about MCMILLER's account, referring to it as the account in the "Korean area," bordering the Dallas "redlight" district.  Martin wrote that the account bothered her so much that she drove to the location on a Saturday to video it.  Martin admitted that she felt uneasy about the account opening so much so that she wished ZO would "reject it."

26.    In that same email Martin also revealed that she had staked out another Asian owned practice in Houston and that, although there was no proof that the business was diverting ZO products, she knew "in her heart of hearts that they are doing wrong."

27.    On October 10, 2022, MCMILLER complained of Martin's discriminatory conduct to the Company's Vice President of Global Professional & Industry Relations. MCMILLER also made a complaint to Nolan about Martin's discriminatory conduct.  After a lengthy discussion with MCMILLER, Nolan promised to speak to Martin about her conduct.  However, Nolan never followed up with MCMILLER and then ignored MCMILLER's future attempts to seek resolution on the matter.

28.    Immediately following MCMILLER's complaints of discrimination and racial profiling to ZO's leadership, MCMILLER became the victim of severe and overt retaliation from Martin and the Company.

29.    Martin started encouraging MCMILLER's accounts to request a new sales representative other than MCMILLER, even though MCMILLER's performance continued to be exceptional.

///

30.    Starting in or about November 2022, Martin began secretly making false entries in the company's "Salesforce" software stating that various clients were complaining about MCMILLER not servicing her accounts.

31.    Martin also alienated MCMILLER from industry activities within her territory, and opened a new accounts in MCMILLER's territory without informing MCMILLER.

32.    In December 2022, two of the most profitable and growing territories, Frisco and Plano, were removed from MCMILLER's sales territory by Martin, and given to a less experienced, but white, Training Executive.

33.    Martin then presented MCMILLER with a new and less profitable territory on December 12, 2022, but made a point of telling MCMILLER that she would still get to keep the minority owned/Asian owned practices that MCMILLER had fought to open.

34.    As the 2022 calendar year came to a close, Martin purposely stalled 3 new accounts that MCMILLER was trying to open. MCMILLER is informed and believes that Martin was attempting to delay the approval so that MCMILLER would lose the commissions before year's end.  MCMILLER had to fight to get two of the accounts opened, but the third one was never approved by Martin.

35.    The one qualified account Martin denied from opening was Asian and minority owned. As MCMILLER pleaded her case to Martin, Martin sternly stated that the account was not "qualified," and yet again encouraged MCMILLER to focus on the other quality accounts in her territory, with emphasis on protecting the ZO brand.

36.    MCMILLER pushed back and asked Martin for explanations.  MCMILLER even escalated the issue up to Nolan and informed him that she was being retaliated against and treated with undue and unreasonable hostility.  But Nolan completely ignored MCMILLER's cries for help, further empowering Martin to continue her discrimination, retaliation and harassment.

37.    As the 2023 sales year started, ZO continued to take accounts away from MCMILLER without explanation.

///

///

38.   On January 20, 2023, Martin drove to one of MCMILLER's legacy accounts and falsely informed the doctor that MCMILLER had forged the doctor's signature to open two new accounts without his knowledge. The doctor told Martin she was wrong and that he had, in fact, signed the documentation for the new accounts.  The doctor then informed MCMILLER of Martin's conduct.

39.   Immediately thereafter MCMILLER contacted ZO's Vice President of Human Resources, Kristen Flynn ("Flynn"), in Irvine, California and complained about Martin's efforts to defame and discredit her in retaliation for raising concerns about racial discrimination and profiling. MCMILLER followed up the call with an email to Flynn requesting a meeting.

40.   On January 25, 2023, MCMILLER spoke with Flynn at the ZO National Sales Meeting, held in Dana Point, California.  MCMILLER spoke with Flynn in great detail of the hostile work environment, the discrimination, the racial profiling, and the ensuing retaliation she had already experienced for complaining to leadership.  Flynn did not agree to investigate the complaint, but only offered to mediate a solution between MCMILLER and Martin.  However, nothing was done.  No action was taken by ZO to stop the harassment and retaliation.

41.   Even while at the meeting in Dana Point, MCMILLER, together with the other African American sales representative from San Antonio, was ostracized by Martin.  Martin had clearly aligned other white sales representatives against the two African American Account Executives, such that the white sales representatives would not speak to them.  Martin even withheld information about a team dinner from Martin.

42.   After the conclusion of the National Sales Meeting in Dana Point, California. MCMILLER followed up with Flynn several times about her complaint. Still no action was taken on ZO's part to investigate MCMILLER's complaint.

43.   Instead, Martin's retaliation escalated and Defendant ZO allowed it.

///

///

///

///

44. ZO continued to realign MCMILLER's sales territory and give her accounts to less experienced, but white, sales representatives. Martin continued to disparage and harass MCMILLER by, among other things, falsifying records stating that MCMILLER encouraged an account to sell unauthorized ZO products online and falsely suggesting to other account executives that all new account documents now had to be "DocuSigned" because MCMILLER had been caught forging signatures, which was not true.

45. Faced with the ongoing retaliation and defamatory statements, MCMILLER made yet another formal Complaint to Defendant's Human Resources Department in California on February 23, 2023.

46. In response to the complaint, Flynn and Nolan both flew to Dallas, Texas on March 3 and 4, 2023, to meet with MCMILLER. They met for nearly 12 hours over 2 days and MCMILLER again explained the pattern and practice of discriminatory and retaliatory conduct she had suffered at the hands of Martin (all with the Company's knowledge) and provided substantial proof to corroborate her claims.

47. Martin participated in part of the meeting, wherein she admitted that she falsely documented in Salesforce that MCMILLER told an account it could sell ZO unauthorized products online. But Martin's confession came only after MCMILLER presented documentation to Martin and Flynn that showed Martin's false entry into Salesforce.

48. In conclusion of the meeting, Flynn said she would "investigate" the claims. However, following the March meeting, no action was taken by the Company. Plaintiff is informed and believes that no real investigation was done, and no discipline was given to Martin and that no resolution of the complaint was achieved. Indeed, MCMILLER continues to report to Martin and the retaliation, harassment, and discrimination has only continued.

49. Flynn stopped responding to MCMILLER altogether when she continued to report the subsequent retaliation, harassment, and discrimination.

///

///

///

50.     On April 3 and 4, 2023, MCMILLER attended a regional team meeting in Fredericksburg, Texas.   At this meeting, MCMILLER and the other African-American sales representative were forced to stay at a separate and lower quality hotel, separate and apart from the meeting hotel where Martin and 85% of the sales team including junior reps and trainers, all white, were permitted to stay.

51.     Since MCMILLER's last correspondence with Flynn in mid-March 2023, Plaintiff has suffered the loss of 2 additional large volume accounts, and she has been subjected to Martin falsifying MCMILLER's sales quota, reducing her monthly resource budget, and unwarranted belittlement of work tasks in front of the Gulf Coast region sales team.   In addition, MCMILLER has discovered that ZO executives have accessed Salesforce and have tried to destroy or alter notes on MCMILLER'S accounts.

52.     The last account removed from MCMILLER occurred on August 28, 2023.   Martin had placed a large order with one of MCMILLER'S accounts and then reassigned it to the same less experienced, but white, new account executive that had benefited from all of MCMILLER's other realignments and reassignments.   Conveniently, if not for that large order, this same representative would not have made her monthly goal.   MCMILLER was not notified of the removal of this account until August 29, 2023, by Nolan. Nolan was untruthful in his responses to MCMILLER about the account, trying to conceal the truth of the timing of the reassignment of the account and order.

53.     While MCMILLER continues to be employed by ZO, her sales territory and accounts have been diminished by approximately 75% of what it was before she complained of the systemic racial profiling and discrimination occurring in her workplace.

**VI.**

**FIRST CAUSE OF ACTION**

**Retaliation in Violation of *Government Code* §§12940, *et seq*.**

**(Against Defendant ZO, and DOES 1 through 50, Inclusive)**

54.     Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if they were fully set forth herein.

1    55.    As set forth more fully above, Defendant retaliated against Plaintiff for engaging in

2    protected activity under the California Fair Employment and Housing Act, Government Code

3    Sections 12940, et. seq., namely making complaints about racial profiling, discrimination, and

4    harassment in her workplace at ZO.

5    56.    As a direct, legal, and proximate result of Defendant's conduct, as alleged above,

6    Plaintiff endured emotional distress, and loss of earnings, for which Plaintiff is entitled to general

7    and special damages in an amount according to proof at the time of trial.

8    57.    As a direct, legal and proximate result of Defendant's conduct, Plaintiff was caused

9    to and did employ the services of council to prosecute this action and is accordingly entitled to an

10   award of attorney's fees according to proof.

11   58.    Plaintiff is informed and believes and thereupon alleges that the Defendant's actions

12   and each of them were taken with malice, fraud, or oppression and/or willful and conscious

13   disregard of Plaintiff's rights and were carried out by Defendant's managing agents and were

14   ratified by Defendant.  Accordingly, Plaintiff is entitled to punitive damages in an amount to be

15   determined at the time of trial.

16                          **SECOND CAUSE OF ACTION**

17   **Workplace Race Discrimination  – Disparate Treatment - in Violation of *Government Code***

18                          **§§12940, *et seq.***

19            **(Against Defendant ZO, and DOES 1 through 50, Inclusive)**

20   59.    Plaintiff realleges and incorporates by reference each and every allegation in the

21   preceding paragraphs as if they were fully set forth herein.

22   60.    As set forth more fully above, Defendant intentionally discriminated against

23   Plaintiff on account of her race in violation of the California Fair Employment and Housing Act,

24   Government Code Sections 12940, et. seq.

25   ///

26   ///

27   ///

28   ///

61. As set forth more fully above, Defendant was aware of, , approved, and condoned, among other things stated above, the continual reassignment of Plaintiff's sales territories to lesser experienced, but white, sales representatives; the systemic racial profiling of Plaintiff's accounts and refusal to approve same; the rooming of Plaintiff in a separate and lower quality hotel accommodation than her white peers, the false allegations of forgery and client neglect; the ostracizing of Plaintiff at work functions and industry workshops.

62. As a direct, legal, and proximate result of Defendant's conduct, as alleged above, Plaintiff endured emotional distress, and loss of earnings, for which Plaintiff is entitled to general and special damages in an amount according to proof at the time of trial.

63. As a direct, legal, and proximate result of Defendant's conduct, Plaintiff was caused to and did employ the services of council to prosecute this action and is accordingly entitled to an award of attorney's fees according to proof.

64. Plaintiff is informed and believes and thereupon alleges that the Defendant's actions and each of them were taken with malice, fraud, or oppression and/or willful and conscious disregard of Plaintiff's rights and were carried out by Defendant's managing agents and were ratified by Defendant. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined at the time of trial.

## THIRD CAUSE OF ACTION

### Failure to Investigate Discrimination and Harassment in

### Violation of *Government Code* §§12940, *et seq.*

### (Against Defendant ZO, and DOES 1 through 50, Inclusive)

65. Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if they were fully set forth herein.

///

///

///

///

///

66.     As set forth more fully above, Plaintiff notified Defendant's human resources department, and other corporate leaders on several occasions of the racial profiling, discrimination and harassment and retaliation she was experiencing at work, which imposed an obligation on Defendant to conduct a fair and reasonable investigation into those complaints, to notify the Plaintiff of the outcome of such investigation and to take appropriate remedial measures based thereupon. Defendant failed and refused to do so and instead elected to ratify, condone, and deny the Unlawful Conduct when Defendant knew the complaints of Plaintiff to be true. Plaintiff's multiple requests for further investigation and protection from the retaliatory conduct, was not only ignored and refused, but such retaliation was intensified.

67.     Defendant failed to investigate Plaintiff's complaints of discrimination and harassment and violation of the California Fair Employment and Housing Act, Government Code Sections 12940, et. seq.

68.     As a direct, legal and proximate result of Defendant's failure to investigate Plaintiff's complaints, as alleged above, Plaintiff endured emotional distress, and loss of earnings, for which Plaintiff is entitled to general and special damages in an amount according to proof at the time of trial.

69.     As a direct, legal, and proximate result of Defendant's conduct, Plaintiff was caused to and did employ the services of council to prosecute this action and is accordingly entitled to an award of attorney's fees according to proof.

70.     Plaintiff is informed and believes and thereupon alleges that the Defendant's actions and each of them were taken with malice, fraud, or oppression and/or willful and conscious disregard of Plaintiff's rights and were carried out by Defendant's managing agents and were ratified by Defendant.  Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined at the time of trial.

///

///

///

///

**FOURTH CAUSE OF ACTION**

Workplace Harassment in Violation of Government Code §§12940, et seq.

(Against Defendant ZO, and DOES 1 through 50, Inclusive)

71.     Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if they were fully set forth herein.

72.     As set forth more fully above, Plaintiff's direct supervisor continually harassed Plaintiff.  Among other things, Plaintiff's direct supervisor repeatedly commented on Plaintiff's skin color, hair type; separated Plaintiff from her colleagues at work meetings; unreasonably scrutinized and disapproved of Plaintiff's Asian owned business leads; deliberately falsified written records in Salesforce regarding Plaintiff; reduced Plaintiff's sales territory and accounts; and made racists jokes directed at and in the presence of Plaintiff.  Plaintiff's supervisor's actions were severe and pervasive such that it constituted harassment, and created a hostile work environment, all in violation of the California Fair Employment and Housing Act, Government Code Sections 12940, et. seq.

73.     Defendant ZO was aware of, or should have been aware of, and condoned Plaintiff's supervisor's harassing conduct as set forth above and condoned the hostile work environment that resulted from the supervisor's conduct, allowing it to continue unabated, and allowing for its escalation after Plaintiff complained about it.

74.     As a direct, legal, and proximate result of Defendant's conduct, as alleged above, Plaintiff endured emotional distress, and loss of earnings, for which Plaintiff is entitled to general and special damages in an amount according to proof at the time of trial.

75.     As a direct, legal, and proximate result of Defendant's conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action and is accordingly entitled to an award of attorney's fees according to proof.

///

///

///

///

76.     Plaintiff is informed and believes and thereupon alleges that the Defendant's actions and each of them were taken with malice, fraud, or oppression and/or willful and conscious disregard of Plaintiff's rights and were carried out by Defendant's managing agents and were ratified by Defendant.  Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined at the time of trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For general and special damages, according to proof at trial;

2.     For compensatory damages according to proof at trial;

3.     Punitive damages;

4.     For reasonable attorney's fees as permitted by law including;

5.     For prejudgment and post judgment interest according to law;

6.     For costs of suit; and

7.     Such other relief as the Court may deem proper.

Respectfully submitted,

Dated:  November 16, 2023

FARNAES & LUCIO, APC
Malte L. L. Farnaes, Esq.

Attorneys for Plaintiff
NICOLE MCMILLER

# Exhibit A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

                                                                                        KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 16, 2023


Malte Farnaes
2235 Encinitas Blvd., Suite 202
Encinitas, CA

RE:    **Notice to Complainant's Attorney**
       CRD Matter Number: 202311-22674516
       Right to Sue: McMiller / ZO Skin Health, Inc.

Dear Malte Farnaes:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 16, 2023

RE: **Notice of Filing of Discrimination Complaint**
   CRD Matter Number: 202311-22674516
   Right to Sue: McMiller / ZO Skin Health, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 16, 2023

Nicole McMiller
4207 Melissa Lane
Dallas, TX 75229

RE:   **Notice of Case Closure and Right to Sue**
      CRD Matter Number: 202311-22674516
      Right to Sue: McMiller / ZO Skin Health, Inc.

Dear Nicole McMiller:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective November 16, 2023 because an
immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days
of receipt of this CRD Notice of Case Closure or within 300 days of the alleged
discriminatory act, whichever is earlier.

Sincerely,


Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
## Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Nicole McMiller

CRD No. 202311-22674516

Complainant,

vs.

ZO Skin Health, Inc.
9685 Research Dr.
Irvine, CA 92618

Respondents

---

**1.** Respondent **ZO Skin Health, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Nicole McMiller**, resides in the City of **Dallas,** State of **TX.**

**3.** Complainant alleges that on or about **August 28, 2023**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's color, race (includes hairstyle and hair texture).

**Complainant was discriminated against** because of complainant's color, race (includes hairstyle and hair texture) and as a result of the discrimination was denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was denied work opportunities or assignments.

**Additional Complaint Details:** Plaintiff was discriminated against and racially profiled for being African American and for reporting incidents of racial profiling.

-1-
*Complaint – CRD No. 202311-22674516*

Date Filed: November 16, 2023

VERIFICATION

I, **Malte Farnaes**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On November 16, 2023, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Encinitas, CA**

-2-
*Complaint – CRD No. 202311-22674516*

Date Filed: November 16, 2023

CRD-ENF 80 RS (Revised 12/22)

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Malte L. L. Farnaes (SBN 222608)<br>FARNAES & LUCIO, APC<br>2235 Encinitas Blvd., Suite 210<br>Encinitas, CA 92024<br>TELEPHONE NO.: (760) 942-9431    FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiff, NICOLE MCMILLER | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Nicole McMiller v. ZO Skin Health, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 30-2023-01363764-CU-OE-CJC |
|---|---|---|
| [✓] Unlimited  [ ] Limited<br>(Amount  (Amount<br>demanded  demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Shawn Nelson<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary  b.[ ] nonmonetary; declaratory or injunctive relief  c.[✓] punitive
4. Number of causes of action *(specify):* 4
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 16, 2023
Malte L. L. Farnaes, Esq.
_____
(TYPE OR PRINT NAME)                    ►                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]  **CIVIL CASE COVER SHEET**  Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
   Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment (*non-domestic relations*)
   Sister State Judgment
   Administrative Agency Award (*not unpaid taxes*)
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
   Declaratory Relief Only
   Injunctive Relief Only (*non-harassment*)
   Mechanics Lien
   Other Commercial Complaint Case (*non-tort/non-complex*)
   Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its website as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

## ADR Information

Introduction.

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

Save Time. A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

Save Money. When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

Increase Control Over the Process and the Outcome. In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

Preserve Relationships. ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

Increase Satisfaction. In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

Improve Attorney-Client Relationships. Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

Loss of protections. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

Less discovery. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

Additional costs. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Effect of delays if the dispute is not resolved. Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

Arbitration. In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

Cases for Which Arbitration May Be Appropriate. Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

Cases for Which Arbitration May Not Be Appropriate. If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

Mediation. In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

Cases for Which Mediation May Be Appropriate. Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

Cases for Which Mediation May Not Be Appropriate. Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

Neutral Evaluation. In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

Cases for Which Neutral Evaluation May Be Appropriate. Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

Cases for Which Neutral Evaluation May Not Be Appropriate. Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

Settlement Conferences. Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, at 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Low cost mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, contact:

- OC Human Relations (714) 480-6575, mediator@ochumanrelations.org
- Waymakers (949) 250-4058

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

| ATTORNEY OR PARTY WITHOUT ATTORNEY:   STATE BAR NO.:<br>NAME:<br>FIRM NAME:<br>STREET ADDRESS:<br>CITY:                                    STATE:          ZIP CODE:<br>TELEPHONE NO.:                           FAX NO.:<br>E-MAIL ADDRESS:<br>ATTORNEY FOR (name): | FOR COURT USE ONLY<br><br>For your protection and privacy, please press the Clear This Form button after you are done printing this form. |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>JUSTICE CENTER:<br>☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045<br>☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512<br>☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595<br>☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500<br>☐ West – 8141 13th Street, Westminster, CA 92683-4593 | |
|---|---|

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
|---|---|

| ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION | CASE NUMBER: |
|---|---|

Plaintiff(s)/Petitioner(s), _____

_____

and  defendant(s)/respondent(s), _____

_____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
       ☐ Under section 1141.11 of the Code of Civil Procedure
       ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an Order on Court Fee Waiver (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court, rule 3.720 et seq.

Date:_____   _____   _____
                 (SIGNATURE OF PLAINTIFF OR ATTORNEY)     (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:_____   _____   _____
                 (SIGNATURE OF DEFENDANT OR ATTORNEY)    (SIGNATURE OF DEFENDANT OR ATTORNEY)

ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>STREET ADDRESS: 700 W. Civic Center DRIVE<br>MAILING ADDRESS: 700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME:  Central Justice Center | **FOR COURT USE ONLY**<br>**FILED**<br>**SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ORANGE** |
| PLAINTIFF: Nicole McMiller | |
| DEFENDANT: ZO Skin Health, Inc. | **Nov 30, 2023**<br>Clerk of the Superior Court<br>By: S. BERRY, Deputy |
| Short Title: MCMILLER VS. ZO SKIN HEALTH, INC. | |
| **NOTICE OF HEARING**<br>**CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>30-2023-01363764-CU-OE-CJC |

Please take notice that a(n), <u>Case Management Conference</u> has been scheduled for hearing on <u>05/09/2024</u> at  <u>09:00:00 AM</u> in Department <u>C19</u> of this court, located at <u>Central Justice Center.</u>

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

**IMPORTANT:** Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

**IMPORTANTE:** Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

**QUAN TRỌNG:** Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giải đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court, By: *S. Berry* _____ , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Central Justice Center
700 W. Civic Center DRIVE
Santa Ana 92701

**SHORT TITLE:** MCMILLER VS. ZO SKIN HEALTH, INC.

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>30-2023-01363764-CU-OE-CJC |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the above Notice of Hearing has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at Santa Ana, California, on 11/30/2023. Following standard court practice the mailing will occur at Sacramento, California on 12/01/2023.

Clerk of the Court, by: _S. Berry_ _____ , Deputy

FARNAES & LUCIO, APC
2235 ENCINITAS BOULEVARD # 210
ENCINITAS, CA 92024

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

V3 1013a (June 2004)                                                    Code of Civil Procedure , § CCP1013(a)